The Honorable Charlie Daniels Commissioner of State Lands State Capitol Building Little Rock, AR 72201
Dear Mr. Daniels:
This is in response to your request for an opinion regarding A.C.A. § 26-37-205 (Repl. 1992), which governs the distribution of funds collected by the Commissioner of State Lands ("Commissioner") from the sale or redemption of tax delinquent lands. Your question focuses, specifically, upon subsection (c) of § 26-37-205. You have asked "whether the term `all funds' as used in Section 26-37-205(c) encompasses the escrow funds that escheat to the county pursuant to Section 26-37-205(b)(2), or, can the escrow funds be distributed to the county's general account[?]"
It is my opinion that the reference in subsection (c) to "[a]ll funds distributed to each county" does not encompass any escrow funds which "escheat" to the county under subsection (b)(2). Disposition of the escheated funds is, in my opinion, a matter to be determined by the county quorum court.
This conclusion follows initially, in my opinion, from the plain language of Section 26-37-205. The funds in question are those which are escrowed by the Commissioner pursuant to Section26-37-205(a)(3). These funds constitute "the remainder" (id.), following distribution of penalties, collection fees, and costs to the Commissioner (§ 26-37-205(a)(1)) and taxes, interest, and costs to the county (§ 26-37-205(a)(2)).[1] If no actions are brought within two years after the sale conducted under Section26-37-202, then subsection (b)(1) of Section 26-37-205 requires the distribution of these "remaining funds" to the former owners of the tax delinquent land. Subsection (b)(2) of § 26-37-205
states further with regard to these escrowed remaining funds that:
 [t]he funds shall be held in escrow for five (5) more years, and, at the end of such five-year period, if the funds have not been distributed, the escrow funds shall escheat to the county wherein the property is located. [Emphasis added.]
Your question regarding the subsequent disposition of these escheated funds arises, presumably, due to the language of subsection (c) of § 26-37-205 which provides:
 All funds distributed to each county by the Commissioner of State Lands from the redemption or sale of tax-delinquent lands, including any interest and costs, are to be distributed to the applicable taxing units where the delinquent land is located within the county in the manner and proportion that the taxes would have been distributed if they had been collected in the year due.
In considering the possible applicability of this subsection to the escrowed funds under subsection (b)(2), it must be recognized that the terms "distribute" and "escheat" are, in their ordinary and usual meaning, distinct. The term "distribute" means "[t]o deal or divide out in proportion or in shares." Black's Law Dictionary 426 (5th ed. 1979). "Escheat" is defined as "[a] reversion of property to the state in consequence of a want of any individual competent to inherit."Id. at 488. Under the so-called "plain meaning rule" of statutory construction,[2] it seems clear that those remaining escrowed funds, if any, which "escheat to the county wherein the property is located" (subsection (b)(2)) are to be distinguished from "[a]ll funds distributed to each county" under subsection (c). It may reasonably be concluded, in my opinion, that the latter funds are those comprised of the taxes, interest, and costs which are distributed to each county in accordance with § 26-37-205(a)(2). The term "distributed" is, admittedly, also used under subsection (b) with respect to the remaining escrowed funds; but this is only in connection with the former landowners. If not distributed to the former owners, these remaining funds "escheat to the county. . . ."Id.
To the extent, however, any ambiguity exists in construing this language, resort to the legislative history of Section 26-37-205
resolves the issue. This Code provision was first enacted as part of Act 626 of 1983, which changed the procedure for selling tax delinquent lands, requiring all sales to occur at the state level. Although Act 626 of 1983 (see Section 6 thereof) was explicit in requiring distribution of the "taxes due" to "each taxing unit," this reference in the original act to the taxing units was deleted in a 1985 amendment (Act 1021 of 1985), which provided for distribution of "the taxes due, plus interest and costs" to thecounty.[3] Subsection (c) was then added in 1987 (see Section 7 of Act 814 of 1987), requiring that "[a]ll funds distributed to each county . . . are to be distributed to the applicable taxing units. . . ."
The purpose of subsection (c) thus seems clear — the taxes, interest and costs that are "remitted to the counties" under subsection (a)(2) must be distributed to the taxing units in accordance with subsection (c). These funds have, it should be noted, always been distinct from the "remainder"[4] which in accordance with subsection (a)(3) is "placed in another escrow fund. . . ." Provision has always been made for the escheat of these remaining funds if they are not distributed, ultimately, to the former owners. See Subsection (b)(2). The remainder originally escheated to the State. See Acts 1983, No. 636, § 6. The 1985 amendment changed it to the county (Acts 1985, No. 1021, § 1); and this was continued throughout the subsequent amendments to § 26-37-205. See n. 3, supra.
In conclusion, therefore, it is clear from both the plain language and the legislative history of Section 26-37-205 that any funds escheating to the counties under subsection (b)(2) are distinct from and not governed by subsection (c) which requires distribution to the taxing units. Because no further provision is made or requirement imposed with respect to the escheated funds, disposition of such funds is, I believe, within the authority of the county quorum court. See generally Op. Att'y Gen. 95-217.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] This latter amount is held in an escrow fund and "remitted to the [county]" within one year. A.C.A. § 26-37-205(a)(2).
[2] The plain meaning rule has been denoted as "the first rule in interpreting a statute. . . ." Gritts v. State, 315 Ark. 1, 3,864 S.W.2d 859 (1993). But see Cooper, The Plain Meaning Rule inArkansas After Foster v. Jefferson County Quorum Court, 49 Ark. L. Rev. 559 (1996) (noting inconsistencies in the Arkansas Supreme Court's approach to the plain meaning rule and suggesting that it is no longer the first rule of statutory construction).
[3] This provision in the 1985 act for distribution to the county is the current language of Section 26-37-205(a)(2), having remained unchanged through three subsequent amendments of Section26-37-205. See Acts 1987, No. 814, § 7; Act 1989, No. 424, § 1; and Act 1991, No. 1080, § 3.
[4] The "remaining funds" (subsection (b)) are those, if any, left after the required distributions to the Commissioner (subsection (a)(1)) and the counties (subsection (a)(2)).